MARYLAND CASUALTY COMPANY, Plaintiff and Appellant, v. QUICK CONSTRUCTION CORPORATION and CARLOS DEL VALLE, JR., Defendants, the latter Appellee.

No. R-62-213. Decided May 8, 1964.

*Rivera Zayas, Rivera Cestero & Rúa* for appellant. *Martín Almodóvar Acevedo* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

The Maryland Casualty Company was surety for Quick Construction Corporation in a public works contract for the construction of the Medical Center of Guaynabo. Quick Construction Corporation was unable to perform its contract and the Secretary of Public Works required the surety to terminate the work. The surety terminated the work and required Quick Construction Corporation and its president, Carlos del Valle, Jr., to pay the amount spent by the surety

in the termination of the work. The surety company alleges that it became surety under the public works contract because Carlos del Valle, Jr., president of Quick Construction Corporation, bound himself personally with the surety to answer with his own property for any loss which the surety might sustain. Del Valle, Jr., alleges, on the contrary, that all his dealings with the surety were made in his capacity of president of Quick Construction Corporation, and he never agreed with the surety to secure it in turn against any loss which the surety might sustain in the construction contract.

In dismissing the complaint against Carlos del Valle, Jr., the trial court concluded that he "did not become principal guarantor of any debt which Quick Construction Corporation might incur in connection with the performance bond issued on July 2, 1956 by Maryland Casualty Company for the construction of the Medical Center of Guaynabo. Indeed, the court has the reasonable certainty, on the basis of the evidence introduced and the inferences drawn therefrom, that what happened was that plaintiff's agent trusted the moral solvency of defendant, who was known to him, and that he accordingly authorized the issuance of the bond in favor of the corporation without further guarantee. It is settled in Puerto Rico that the desire to bind one's self in this type of case should be express. The facts provided during the hearing do not warrant the finding that Del Valle bound himself personally with the surety company. There is an extraordinary similarity between the facts of this case and those which the Supreme Court of Puerto Rico found proved in *Compañía Industrial* v. *Sánchez*, 21 P.R.R. 178."

The surety-appellant alleges that the trial court committed the following errors: (1) In concluding that codefendant Carlos del Valle, Jr., never bound himself to answer with his private property for the obligations of Quick Construction Corporation, "although that possibility was considered," such conclusion being in open conflict with the value

and the probative force of the evidence; (2) In concluding that Carlos del Valle, Jr., did not become principal guarantor of any debt which Quick Construction Corporation might incur in connection with the performance bond for the payment of materials and labor issued on July 2, 1956 for the construction of the Medical Center of Guaynabo, this conclusion being a manifest error as it appears from the weighing as a whole of the entire evidence; (3) In concluding that the surety's agent trusted the moral solvency of defendant, who was known to him, and that he accordingly authorized the issuance of the bond in favor of Quick Construction Corporation without further guarantee, as being in open conflict with the value and probative force of the evidence, for a clear case of variance or manifest error between the most adequate interpretation of the evidence and the findings of fact, and failing to represent the more rational, fair and juridical balance of the evidence, and contravening the rational order of human intelligence; (4) Because the evidence presented in this case by the surety to show that all the bonds in favor of Quick Construction Corporation were issued upon the guarantee which codefendant Carlos del Valle, Jr., had given to plaintiff to the effect that he would be personally responsible for the losses which the surety might sustain by reason of the bonds issued in favor of codefendant Quick Construction Corporation—a corporation which transacted business for hundreds of thousands of dollars with a paid-in capital of $4,000—which evidence consisted of the testimony of several witnesses—one was holder of 50 percent of the capital stock of Quick Construction Corporation, the other 50 percent being held by the family of Del Valle, Jr. Those witnesses testified having heard Del Valle, Jr., himself make statements on several occasions that he was personally responsible to the insurance company for any loss which it might sustain, "for anything which might happen in the contract," without there being evidence to the

contrary other than the interested testimony of Del Valle, Jr., himself. Such evidence does not support the trial court's finding that "the plaintiff's agent issued the bonds because he trusted defendant's moral solvency"; (5) Because the part of the judgment dismissing the complaint as to Carlos del Valle, Jr., is clearly and manifestly erroneous, and an analysis of the evidence would convince this Court that a manifest error has been committed.

The assignment of errors presents a simple question of weighing of evidence. The question for decision is whether Carlos del Valle, Jr., agreed verbally to do what he refused to do in writing: to guarantee personally the losses of the surety-appellant as a result of the failure of Quick Construction Corporation to perform the public works contract.

1–2. An exhaustive analysis of the testimonies given by Orfilio Peláez, Jacinto F. Casablanca, Jr., Manuel San Juan, Jr., and Haydee Seda has convinced us that the finding of the trial court in the sense that codefendant Carlos del Valle, Jr., never bound himself to answer with his private property for the obligations of Quick Construction Corporation is absolutely correct. What the evidence shows at most is that Carlos del Valle, Jr., occasionally made statements on the solvency of the corporation under his direction or on his own solvency, and, after the Secretary of Public Works required the surety company to terminate the contract, the assertions that the construction corporation could terminate the work without loss to the surety company. Every time he was required to agree in writing to guarantee the operations of the surety company to terminate the work, he refused to do so.

3–5. The inference drawn by the trial court in the sense that the agent of the surety-appellant, trusting the moral solvency of defendant, authorized the issuance of the bonds of Quick Construction Corporation without further guarantee, may or may not be a perfect interpretation of the presumable elements of implied consent, but unquestionably

it does not constitute a manifest error and is not at variance with the more rational, fair and juridical balance of the evidence, nor contravenes the rational order of human intelligence. The evidence shows that on some occasions, though not in the general course of business, the surety company issued bonds without requiring a guarantee of the debtors for the losses which the surety company might sustain. Although unquestionably it is the practice of the surety business to require such guarantee, it is not to be expected, except for some percentage suggested by secular experience, that the surety company be always covered fully in every operation. The evidence further shows that the professional education and the standing of the person in the community are taken into account. San Juan, Jr., gave a clear and trustworthy explanation of the peculiar character of the business. Here it is: "He [Del Valle, Jr.] then explained to me that he had organized the corporation with a very limited capital, only $4,000, and I explained to him that with that capital, notwithstanding the experience of his partner Casablanca, he did not qualify for any kind of bond. [P] I then explained to him the established general practice of insurance companies in isuing bonds of that nature. I also explained that in addition to the moral standing of the person involved, he needed experience, that the factors of experience as contracting engineers, equipment and the economic factor in particular were considered; that according to the established practice of insurance companies, it is necessary to own proper equipment for the proposed project in addition to other factors of experience, knowledge, moral standing; the contractor's economic position must be not less than 10 percent of the price of the contract, or a minimum of $15,000." (11 Tr. Ev. 21–22.)

As may be seen, the criterion applied to construction insurance operations is based on the moral standing, the experience and the minimum economic solvency of the appli-

cant. It should not seem strange, then, that when applicant's economic solvency passes to a secondary consideration that the trial court inferred that the moral conditions of Del Valle, Jr., and experience of Casablanca were the factors which led to the issuance of the credit.

■ The analysis which we have made of appellant's evidence has convinced us that codefendant Del Valle, Jr., did not agree verbally to reimburse the surety company for the losses which it might sustain in the contract of Quick Construction Corporation. Isolated phrases, a few words, slight promises would never have the sufficient glitter to produce light within the setting of certain circumstances, a continuity of the conduct, which show otherwise.

■ In this study we have applied the rule established in *Sanabria* v. *Heirs of González*, 82 P.R.R. 851, 961–65 (Belaval) (1961), in the sense that the findings of fact of a trial court may be set aside, even if there is supporting evidence, if from an examination of the entire evidence the reviewing court is left with the definite and firm conviction that an error has been committed, and if the findings of the trial judge conflict with the more rational, fair and juridical balance of the entire evidence (at 962–63). What happens in this case is that the findings of fact of the judge are correct and represent the more rational, fair and juridical balance of the entire evidence. Doubt has arisen in the discussion of this case as to whether the above-copied rule, laid down in *Sanabria* v. *Heirs of González*, applies to filiation cases exclusively. There is no such thing; that rule is of general application and it therefore covers any civil action.

■■ However, Rule 43.1 of the Rules of Civil Procedure of Puerto Rico of 1958, which provides that "The findings of fact based on oral testimony shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of

the witnesses," is still the rule of general application unless clearly erroneous. What *Sanabria* v. *Heirs of González* holds is that the findings are clearly erroneous, even if there is evidence to support them, whenever such findings do not represent the more rational, fair and juridical balance of the entire evidence. The rationale of this is clear: justice cannot be held static by a set of instrumental rules which at some previous time could have produced a very pragmatic concept of the administration of justice. The fact that on several occasions we have reaffirmed the general rule that the findings of fact of a trial court shall not be disturbed unless clearly erroneous does not mean that we have modified the tenor of the doctrine of *Sanabria* v. *Heirs of González* in the sense that, even though there is evidence to support them, the findings of fact of a trial court are considered clearly erroneous if from an examination of the entire evidence the reviewing court is left with the definite and firm conviction that an error has been committed, as where the findings of fact conflict with the more rational, fair and juridical balance of the entire evidence.

The judgment rendered by the Superior Court, San Juan Part, on July 24, 1962, will be affirmed.